UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:16-21-DCR-CJS-2 |
| | ) | and |
| v. | ) | Civil Action No. 6:20-34-DCR-CJS |
| | ) | |
| | ) | |
| MAURICE SYDNOR, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Maurice Sydnor, *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (R. 470).  The Government has responded (R. 481), and Sydnor has replied (R. 491; R. 497).  Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b).  *See also* Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636.").  For the reasons given below, it will be recommended that Sydnor's § 2255 motion **be denied**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In 2015, Kentucky state law enforcement began investigating a suspected drug trafficker, Timothy Harris, and members of his organization.  (R. 386, Page ID 1743).  This investigation ultimately led law enforcement to search Sydnor's residence based on suspicion that "he had handed a bag of methamphetamine to Harris on June 9, 2016." (*Id.* at 1744).  The search uncovered two firearms "in a closet in the master bedroom"—Sydnor stated that he was a convicted felon and

that the firearms were his. (*Id.*). Sydnor was arrested and federally indicted for his role in Harris's drug organization. (*See* R. 33).

On December 14, 2017, Sydnor moved for rearraignment, stating that he reached a plea agreement with the Government. (R. 297). That same day, the Government filed its notice under 21 U.S.C. § 851, informing that Sydnor was subject to an enhanced statutory penalty based on a prior Indiana state drug conviction. (R. 300). On December 18, 2017, Sydnor entered into the plea agreement and was rearraigned, pleading guilty to conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (R. 308; *see* R. 33). A presentence investigation report was prepared in February 2018 (later revised in March 2018) noting that Sydnor was subject to a minimum sentence of twenty years in prison. (R. 386).

While Sydnor would typically face a statutory mandatory-minimum sentence of ten years in prison and a maximum $10,000,000 fine, the mandatory minimum was enhanced to twenty years and the potential maximum fine to $20,000,000 because Sydnor committed his crime "after a prior conviction for a felony drug offense ha[d] become final." § 841(b)(1)(A) (2010); (*see* R. 300; R. 308). At sentencing on March 23, 2018, the presiding District Judge sentenced Sydnor to the mandatory minimum 240 months (twenty years) in prison, to be served consecutive to any penalty "that may be imposed in Jefferson Circuit Court Case number 14-CR-830 and Floyd Superior Court, Case number 22D03-0902-FA-00373"; ordered a $15,000 fine;[1] and declined to

---

[1] Specifically, it was ordered that a "[l]ump sum amount of $15,100.00 [$15,000 fine plus a $100 special assessment] shall be due immediately. Any outstanding balance owed upon commencement of incarceration must be paid in accordance with the Federal Bureau of Prisons' Inmate Financial Responsibility Program. Any outstanding balance owed upon commencement of supervision must be paid according to a schedule set by subsequent orders of the Court." (R. 378, Page ID 1716).

recommend Sydnor participate in the Residential Drug Abuse Program (RDAP).  (R. 378; R. 441, Page ID 2121).  Sydnor appealed his enhanced sentence and his fine, arguing, among other things, that the Government failed to timely inform him of the predicate conviction supporting his enhancement as required by 21 U.S.C. § 851.  Finding no error, the Sixth Circuit affirmed on February 4, 2019.  *United States v. Sydnor*, 762 F. App'x 284, 286 (6th Cir. 2019).

On February 10, 2020, Sydnor filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (R. 470).  Therein, he argues that his trial counsel was ineffective for failing to:  (1) postpone his change-of-plea hearing until the District Judge ruled on his objection to the Government's § 851 notice; (2) prevent him from entering into a "dubious" plea agreement and object when the Government breached the plea agreement by recommending an above-Sentencing-Guidelines sentence; (3) object when the Government highlighted facts at sentencing that effectively requested a harsher-than-agreed-to sentence; (4) properly advise him of his fine range and that "the Court would have discretion to order partial payments on a fine"; and (5) suppress inadmissible evidence at sentencing related to statements regarding firearms found at his home.  (*Id.*, Page ID 2499-2506, 2522).  He asks to have his conviction and sentence vacated and be allowed to withdraw his plea and proceed to trial or be resentenced before a different judge. (*Id.* at Page ID 2533-34).  The Government responds that all of Sydnor's grounds are meritless. (R. 481).

Although Sydnor filed a reply brief, he has submitted a "traverse," which is essentially a second reply brief, stating that the person helping him with his case was only recently available for purposes of preparing a reply.  (R. 497).  The Court could reject Sydnor's second reply for being untimely and because he already filed one.  (*See* R. 482).  Still, the Court has considered the second reply in preparing this Report and Recommendation.

Notably, Sydnor appears to abandon his first two grounds, that counsel was ineffective for failing to: (1) postpone his change-of-plea hearing until the District Judge ruled on his objection to the Government's § 851 notice, and (2) prevent him from entering into a "dubious" plea agreement and object when the Government breached the plea agreement by recommending an above-Sentencing-Guidelines sentence. (R. 497, Page ID 2691). Sydnor's apparent withdrawal of these grounds is noted and accepted. However, these two grounds are still addressed herein because they inform other grounds raised by Sydnor. Otherwise, Sydnor's second reply is mostly a rehash of his § 2255 motion; the few portions that are not a repeat of arguments in his § 2255 motion have been considered and rejected.

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a defendant may seek relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a defendant "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)). A defendant must prove his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Because all of Sydnor's grounds allege that his counsel was ineffective, the familiar two-part test from *Strickland v. Washington*—(1) counsel's deficient performance and (2) resulting prejudice to the defendant—frames the analysis of his § 2255 motion. *Strickland v. Washington*, 466 U.S. 668, 678, 694 (1984); *Lafler v. Cooper*, 566 U.S. 156, 163-65 (2012) (noting that *Strickland* applies in plea and sentencing contexts). Under *Strickland*, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### A. Counsel was Ineffective for Allowing Sydnor to Enter Into a "Dubious" Plea Agreement and for Failing to Challenge the Government's Alleged Breach of the Plea Agreement (Ground Two)

The Court begins by addressing this ground first because its resolution informs the discussion on Sydnor's other grounds. Sydnor argues that counsel was ineffective because he did not prevent him from entering a "dubious" plea agreement and failed to object when the Government breached the plea agreement by recommending a sentence above what it promised. (R. 470, Page ID 2522). This argument hinges on Sydnor's contention that his plea agreement was "ambiguous" under *United States v. Jones*, 569 F.3d 569 (6th Cir. 2009). (*Id.*).

In *Jones*, the Sixth Circuit considered whether Defendant Jones "waived, via his plea agreement, the right to appeal" his statutory mandatory-minimum sentence. 569 F.3d at 571. "Under the plea agreement, Jones 'waive[d] the right to appeal any sentence which is at or below the maximum of the guideline range as determined by the Court,' but he 'retaine[d] the right to appeal a sentence above the guideline range.'" *Id.* at 572 (internal citations to record omitted). The question for the Sixth Circuit was how should "guideline range" be defined in this context?

*Id.* The Government argued that Jones's statutory mandatory-minimum sentence became the "guideline range" by virtue of United States Sentencing Guidelines (USSG) § 5G1.1, which states that, "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." *Id.* "Jones argue[d] that the term 'guideline range' in the plea agreement refer[red] to the range of 70 to 87 months calculated by the district court before applying the statutory minimums." *Id.* The Sixth Circuit concluded that both interpretations of "guideline range" were reasonable, which rendered the appellate waiver provision "ambiguous," emphasizing "that ambiguities in plea agreements must be construed against the government." *Id.* at 573.

Sydnor argues that *Jones* requires this Court to conclude that the Government's promise in his plea agreement "not [to] seek a variance or departure above the sentencing guidelines range determined by the Court," is likewise ambiguous. Specifically, he contends that the "sentencing guidelines range" should mean the 151-188 month range calculated before the mandatory minimum was accounted for, not the 240 months (the statutorily required minimum sentence) advocated by the Government at sentencing, which Sydnor contends was in breach of the plea agreement. (R. 470, Page ID 2522; *see* R. 441, Page ID 2104, 2116).

But *Jones* hinged on the fact that the plea agreement was ambiguous—the agreement did not clearly state whether "guideline range" meant the range that resulted before or after the application of the statutory-mandatory minimum for purposes of interpreting the appellate-waiver provision. Importantly, the Sixth Circuit has declined to apply *Jones* where the defendant otherwise knew that his statutory-mandatory minimum dictated the guideline range. *See United States v. Thomas*, 605 F.3d 300, 313 (6th Cir. 2010) (upholding appellate waiver provision where defendant acknowledged on the record, including at his plea hearing, that the statutory mandatory-

minimum sentence was "tied to the calculation of his guideline range"). This makes sense because "guideline range" is not ambiguous where a defendant knows that it is determined by a statutory mandatory-minimum penalty.

The record in this case reflects that *Thomas* governs here, not *Jones*, because Sydnor knew that his statutory-mandatory minimum dictated his guidelines range. Sydnor's plea agreement specifically provided that "[t]he statutory punishment for Count One is imprisonment for *not less than 20 years* and not more than life, a fine of not more than $20,000,000, and a term of supervised release of at least 10 years." (R. 308, Page ID 1484) (emphasis added). And Sydnor acknowledged "that [he] underst[ood] this Agreement, that [his] attorney has fully explained this Agreement to [him], and that [his] entry into this Agreement [was] voluntary." (*Id.* at Page ID 1486). But assuming, *arguendo*, that the plea agreement left any lingering doubt about the *mandatory* nature of the enhancement, the Court at rearraignment did not:

> THE COURT: In this case there's a mandatory minimum term that's required. I'll talk a little bit more about that in just a moment. But the term of imprisonment is not less than 20 years imprisonment.

(R. 440, Page ID 2070).

> . . . .

> THE COURT: Do you understand and agree that you do have this prior felony drug conviction that's outlined in the notice that's been filed by the United States? That's the conviction from Indiana.

> DEFENDANT SYDNOR: Yes.

> THE COURT: And that's the one I just went over with you just a moment ago.

> DEFENDANT SYDNOR: Yes.

> THE COURT: All right. And by virtue of that prior conviction, that's the reason that these penalty provisions are higher in the case. You understand that?

> DEFENDANT SYDNOR: Yes.

(*Id.* at Page ID 2071).

. . . .

THE COURT:  The guidelines are affected by any mandatory minimum terms.  In other words, the guidelines are not mandatory on District Courts, but the statutory penalties would be.  So if you're subject to a mandatory minimum term of 20 years, there are only a couple of exceptions where the Court can impose a sentence below that.  I'll talk with you about that in just a moment.  *But understanding that the guidelines are subject to the mandatory minimums*, let me talk with you about the guidelines.

(*Id.* at Page ID 2072-73) (emphasis added).

. . . .

THE COURT:  And in this case there's a mandatory minimum of 20 years, *and there are only a couple of ways the Court can consider a sentence below that*, and I've just explained just generically for you one of the ways that the Court could sentence below that mandatory minimum, and that is if the government files a motion for cooperation in the investigation or prosecution of others.  *If such a motion isn't filed, I couldn't consider it and could not go below the mandatory minimum in the case.*  You understand that to be the situation?

DEFENDANT SYDNOR:  Yes, sir.

(*Id.* at 2076) (emphasis added).

After so explaining, the District Judge asked, "Mr. Sydnor, how do you plead to Count 1 of the superseding indictment?"  (*Id.* at Page ID 2086).  Sydnor responded, "Guilty."  (*Id.*).

Thus, the problem for Sydnor reveals itself—even assuming that his attorney failed to make clear that he would be serving at least 240 months in prison, "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea."  *Ramos v. Rogers*, 170 F.3d 560, 561 (6th Cir. 1999).

This ties into the prejudice inquiry under *Strickland*, which requires Sydnor to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Sydnor asserts that had his counsel not

8

allowed him to enter into the "dubious" plea agreement or had counsel objected at sentencing when the Government allegedly breached the agreement by recommending a 240-month sentence, the presiding District Judge would have "(1) sentenced [him] within his calculated guideline range; or (2) allowed [him] to withdraw his plea and proceed to trial; or (3) returned the parties back to the negotiating tables."  (R. 470, Page ID 2523-24).

However, Sydnor's own words show otherwise—a*fter* the District Judge informed him of the mandatory nature of the penalty and that the sentencing guidelines were subject to the mandatory minimum, *he still pled guilty*.  And there is no probability, let alone a reasonable probability, that he could have been sentenced "within his calculated guideline range," meaning the range without resort to the statutory mandatory-minimum sentence, as the District Judge explained at the plea hearing.  (R. 470, Page ID 2523); *see United States v. Baker*, 380 F. App'x 465, 469 (6th Cir. 2010) ("[A] court may not depart below the statutory minimum unless the government moves for such a departure under either 18 U.S.C. §§ 3553(e) or 3553(f)."). Accordingly, this ground fails.

### B.    Counsel was Ineffective for Failing to Object When the Government Effectively Advocated for a Harsher-Than-Agreed-to Sentence (Ground Three)

Syndor's next ground takes an alternative approach to his just-discussed ground, conceding, *arguendo*, that the plea agreement allowed the Government to recommend 240 months in prison but arguing that the Government breached the plea agreement in another way.

> Even if the plea agreement did authorize the Government to recommend the mandatory minimum (which it did not), and even if the Court determines that the colloquy could have somehow cured counsel's misadvice and the ambiguous plea agreement, the Government must still be held accountable for breaching the terms of the plea agreement for advocating for a harsher sentence by elaborating on the seriousness of the offense, Defendant's criminal history, and his 'alleged' disrespect for the law, and the need to protect society from him.

(R. 470, Page ID 2524).  Although framed as an attack on the Government's failure to abide by the plea agreement, Sydnor clarifies that what he is attacking is counsel's failure to object to the Government's argument at sentencing.  (*Id.* at 2527-28).  Sydnor primarily relies on *United States v. Mason*, 410 F. App'x 881 (6th Cir. 2010), which notes that it is improper for the prosecution to pay "lip service" to a plea agreement, only to effectively advocate at sentencing for a higher punishment than agreed to, *id.* at 889 (internal citation omitted). (R. 470, Page ID 2526-27).

Sydnor identifies what he considers to be the harsher-than-agreed to sentence in discussing *Strickland* prejudice:  "[I]f counsel had competently objected, then the Court would not have considered the remarks or: (1) imposed a $15,000 fine; (2) [consecutive] sentences; (3) made a recommendation against RDAP; or (4) made the remarks that imp[l]ied Defendant shouldn't receive a sentence reduction upon any new laws that might come into effect."  (*Id.* at 2528).  But this is all supposition because the Government never promised in the plea agreement to make recommendations as to his fine, the consecutive nature of his sentences, a RDAP placement, or prospective sentence reductions.  Put simply, this ground fails because Sydnor's counsel cannot be ineffective for failing to object to a promise that was not made.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

### C.    Counsel was Ineffective for Failing to Postpone Sydnor's Change-of-Plea Hearing Until a Ruling on his Objection to the Government's § 851 Notice (Ground One)

According to Sydnor, before his guilty plea he was "determined to go to trial."  (R. 470, Page ID 2518).  He claims that his counsel warned him that, if he went to trial, the Government would seek to enhance his sentence by filing a notice under 21 U.S.C. § 851, "which would subject Defendant to either a 20 year mandatory minimum or a mandatory life sentence."  (*Id.*).  "[I]f he

was going to plead guilty then [he] should do it now," counsel advised, "because Defendant's guid[e]line range . . . would only be 121-151 months or 151-188 months (depending on whether if the Court applied a two-level gun enhancement)."[2] (*Id.*). Sydnor took what he claims was counsel's advice and moved for rearraignment on December 14, 2017. (*Id.*; *see* R. 297). However, that same day, the Government filed its § 851 notice. (R. 470, Page ID 2518; *see* R. 300). Still, accordingly to Sydnor, counsel told him "not to worry about the enhancement because the Government's notice was untimely and that they would prevail in [o]bjecting to it to the District Court." (R. 470, Page ID 2518). Counsel did object to the § 851 notice, but it was about three months after Sydnor's plea agreement (R. 365), and the District Judge overruled the objection (R. 373). Sydnor argues that his counsel should have objected to the § 851 notice and asked the presiding District Judge to rule on it *before* he pled guilty because he "would not [have pled] guilty and would [have] elect[ed] to go to trial upon the Court upholding the validity of the § 851 notice of enhancement." (*Id.* at Page ID 2519-20).

In the guilty plea context, the first part of the *Strickland* test is unchanged, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)—the Court considers whether "counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687. The second part of the test, which considers prejudice to the defense, is tailored to the setting: "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[3] *Hill*, 474 U.S. at 59.

---

[2] Although in addressing Ground Two the Court has already determined that Sydnor understood the mandatory nature of the statutory minimum, his articulation of counsel's advice in Ground One also indicates that he knew all along that he would be subject to at least 240 months in prison.

[3] *Hill* applies here because its formulation of prejudice is the type that Sydnor argues in this ground. (R. 470, Page ID 2520). "*Hill* was correctly decided and applies in the context in which it arose. *Hill* does

"A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). If Sydnor's contention that his counsel "promis[ed] [him] that they would prevail in challenging the § 851 enhancement" were accurate, he might have a viable ineffective-assistance claim. (R. 470, Page ID 2520). Under Sydnor's version of events, he was given a bad promise, as evidenced by the Sixth Circuit's summary rejection of his § 851 notice claim on direct appeal. *Sydnor*, 762 F. App'x at 286 ("What matters is that the government filed the document before Sydnor pleaded guilty at the rearraignment. That's all the statute requires.").

But counsel offers a different version of events in his affidavit, stating that "the [G]overnment's decision to seek the enhanced statutory penalty pursuant to 21 U.S.C. § 851 was final and [he] advised Mr. Sydnor of this fact." (R. 481, Page ID 2589-90). And counsel "discussed the statutory enhancement on numerous other occasions prior to Mr. Sydnor's guilty plea. Despite [counsel's] efforts, the government's position never changed, and [counsel] notified Mr. Sydnor as such. *See, e.g.*, [Exhibit 3 - 6-16-2017 Letter to Sydnor]. [Counsel] never advised Mr. Sydnor otherwise." (*Id.* at Page ID 2590). *After* Sydnor's guilty plea, counsel "became aware of a fellow CJA attorney in another case litigating an objection to an § 851 notice filed against his client." (*Id.* at Page ID 2591). "Mr. Sydnor and I discussed the § 851 objection on subsequent occasions. I explained it was *highly unlikely* that the District Court would grant the objection, but we could preserve the issue for appeal by filing it prior to his sentencing hearing. *See* [Exhibit 5 - 3-14-2018 Letter to Sydnor, Page 1]. I then filed the objection on March 16, 2018." (*Id.* at Page ID 2591) (emphasis added).

---

not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

Sydnor and counsel thus offer very different accounts of the sequence of events surrounding the Government's § 851 notice and any challenge to be raised to it. However Sydnor's alleged version of events "cannot be accepted as true because [it is] contradicted by the record." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *MacLloyd v. United States*, 684 Fed. App'x. 555, 559 (6th Cir. 2017)). As noted earlier, the plea agreement, and to a greater extent the presiding District Judge, explained to Sydnor that he was going to serve at least 240 months in prison. Sydnor confirmed at his plea hearing that he understood.

To escape the inevitable, Sydnor contends that there was a promise from counsel that he would not receive the enhancement. But the record prevails.

> THE COURT: Other than what's contained in the plea agreement and the supplement, have there been any other promises that have been made to you that have caused you either to sign these documents or to indicate that you wish to enter a guilty plea?
>
> DEFENDANT SYDNOR: No, sir.
>
> THE COURT: Has anyone made any threats or in any way forced you either to sign these documents or to enter a guilty plea in the case?
>
> DEFENDANT SYDNOR: No.

(R. 440, Page ID 2069). Surely if counsel had promised Sydnor that the § 851 notice would be ruled untimely, resulting in no statutory mandatory-minimum sentence of 240 months, it would have been incumbent upon Sydnor to say so. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("We note additionally that once it became clear at the sentencing hearing that the government did not intend to stand mute, it would have been reasonable for defendant, who was present and represented by counsel, to object if the agreement did indeed consist in part of this promise."). Rather, Sydnor's "solemn declaration[] in open court [that he did not sign the plea agreement based on any promise] carr[ies] a strong presumption of verity." *Blackledge v. Allison*,

431 U.S. 63, 74 (1977).  And for good reason as "[i]t is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties."  *Baker*, 781 F.2d at 90.  "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Here, the contemporaneous evidence of Sydnor's sworn statement that no "other promises" induced his guilty plea undermines his newfound assertions.  And he fails to overcome the strong presumption of verity afforded his statement as he has offered no "extraordinary circumstances, or some explanation of why [he] did not reveal" his counsel's alleged promise.  *Baker*, 781 F.2d at 90.  Thus, Sydnor remains "bound by his statements in response to [the] court's inquiry."  *Id.* (quoting *Moore v. Estelle*, 526 F.2d 690, 696 (5th Cir. 1976)).

### D.     Counsel was Ineffective for Failing to Properly Advise Sydnor of his Fine Range (Ground Four)

As noted, the maximum fine that Sydnor faced was $20,000,000.  However, under the Guidelines he was subject to a minimum fine of $30,000.  *See* USSG § 5E1.2(c)(3)-(4); (R. 386, Page ID 1764-66).  But even this minimum fine was not a certainty because a court may impose a lesser fine or waive the fine altogether if the defendant shows "that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents."  § 5E1.2(e).

Sydnor asserts that his counsel was ineffective for failing to tell him that he could be subject to a $30,000 minimum fine because his decision-making process would have been different if he were so informed.  Sydnor argues

14

> he would not have pled guilty and he would have insisted on going to trial if [trial counsel,] the Court, or the plea agreement would have advised him that his offense level . . . could cause his minimum fine range to increase from $0 to 30,000 or if anyone had informed him 'beforehand' that the Court would have discretion to order Defendant to make partial payments on a fine in the event that he was unable to pay for a fine in full.

(R. 470-1, Page ID 2529). For his part, Sydnor's counsel states in his affidavit that he "never told Mr. Sydnor that the Court would not impose a fine as part of his sentence." (R. 481, Page ID 2592).[4]

Courts do not decide cases on the "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" but instead consider "contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967. And a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). This rationality inquiry informs the prejudice prong of *Strickland*—"a defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966. The point of this inquiry is not to figure out "the probability of conviction for its own sake"; rather, it is a means to assess the defendant's "weigh[ing] [of] their prospects at trial in deciding whether to accept a plea." *Id.* "[I]f it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish." *United States v. Dominguez Benitez*, 542 U.S. 74, 85 (2004).

Here, Sydnor not only faced the possibility of a *maximum* term of life in prison (*see* R. 386, Page ID 1764), but he acknowledges (R. 470, Page ID 2518) that counsel informed him (R. 481,

---

[4] As an initial matter, the Court notes that Sydnor has cited no case establishing that counsel's failure to inform a defendant of a minimum fine is deficient performance. As discussed in footnote 8, the case he does cite is distinguishable.

15

Page ID 2596) that the Government might file a second § 851 notice, which would subject him to a *mandatory* sentence of life in prison under § 841(b)(1)(A)(2010). The choice to avoid a *potential* $30,000 fine would not be rational under these circumstances in light of the long odds Sydnor faced.

Sydnor's criminal proceeding concerned conspiracy to distribute drugs and there was a wealth of evidence that Sydnor did just that. (R. 308; *see* R. 33). As noted above, police begin investigating drug trafficking by Timothy Harris in October 2015, using "confidential informants (CI) to make controlled purchases of drugs from Harris and other members of his organization." (R. 386, Page ID 1743). As part of this investigation, a CI met with Harris in June 2016, during which Sydnor provided a brown bag to Harris—when police pulled Harris over, they found roughly three pounds of methamphetamine in the bag. (R. 386, Page ID 1744).[5] This is bad for Sydnor but there is more. Multiple persons told officers that they had gotten drugs from Sydnor or saw him provide drugs to others.

> Gossett reported that she had observed Sydnor provide Harris with "dope" in the past and advised that Sydnor would hold "dope" at his residence. (*Id.* at Page ID 1747). Gossett reported that she always traveled to Sydnor's apartment to obtain "dope."

(*Id.* at Page ID 1748).

> Jones stated she went to Louisville, Kentucky, with Harris approximately three times per week in October and November 2015. She reported seeing Sydnor supply Harris with drugs on approximately five occasions.

(*Id.* at Page ID 1749).

---

[5] Although Sydnor was not caught holding the bag and denied knowledge of its contents, he admitted that he handed the bag to Harris. (R. 172, Page ID 1055). This statement was challenged in a motion to suppress, which the then presiding District Judge denied as to the brown-bag statement. (*Id.* at Page ID 1070).

Marcum indicated that she and Epperson were directed by Harris to meet Sydnor at a store in Louisville, Kentucky. Harris was not present during this transaction and Sydnor provided the heroin to Epperson on this occasion.

(*Id.*).

Cathy Jose spoke to the police about a month after Sydnor's arrest and immediately after her own. She gave no description of Sydnor before identifying his picture. R. 103 at 23–24. On the other hand, she had met Sydnor at least twenty times, drugs were always involved, and she did not hesitate before identifying him.

(R. 172, Page ID 1067).[6]

At the same time, however, Depree said he knew "Black" (Sydnor) and had engaged in numerous drug transactions with him, and he identified the photograph without hesitation.

(*Id.*).

[Chelsea Sexton] had met Sydnor in a few prior drug transactions, and she aptly described him before seeing the license photo.

(*Id.* at Page ID 1068).

All of this shows that Sydnor's prospects for success at trial were grim.[7] And "where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Lee*, 137 S. Ct. at 1966; *see Dominguez Benitez*, 542 U.S. at 85 ("When the record made for a guilty plea and sentencing reveals evidence, as this one does, showing both a controlled sale of drugs to an informant and a confession, one can fairly ask a

---

[6] The identifications discussed in this section were the subject of a motion to suppress by Sydnor, which request to suppress the eyewitness photo identifications was denied. (R. 172, Page ID 1070).

[7] Sydnor states that "[t]he Government's case was completely circumstantial, there was no physical evidence (such as finger prints, DNA, audio or video surveillance) directly linking me to a crime. All the evidence could be countered with a simple and logical explanation of innocence." (R. 470, Page ID 2536). He does not provide a simple, logical explanation of his innocence, and his summary representation that the case against him was weak is unsubstantiated.

17

defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial.").

So knowing that Sydnor's risk of conviction was great, the Court now considers the potential payoff. According to Sydnor, it was the possibility of avoiding a *discretionary* minimum $30,000 fine. But is this the type of "determinative issue" or "particularly severe penalty" that would cause Sydnor to place paramount importance in deciding whether to plead guilty? *Lee*, 137 S. Ct. at 1968 (internal citation omitted). Sydnor cites no contemporaneous evidence demonstrating as much and his claim thus fails on that basis alone.[8] *See United States v. Hobbs*, 953 F.3d 853, 858 (6th Cir. 2020) (rejecting federal prisoner's claim where "no contemporaneous evidence suggests that he would have rejected the plea deal had the indictment contained the knowledge-of-status element); *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012) ("The only counterweight Haddad points to in support of his claim that he would have insisted on going to trial is the after-the-fact allegation in his affidavit; in other words, all Haddad offers to support his claim is the claim itself. Not only is that claim insufficient to show prejudice because the test is objective, but the entire record goes against it.") (internal citation omitted).

Moreover, Sydnor's assertion is not logical. Presumably, Sydnor proffers that he believes it would be worth risking life in prison over the Court imposing a fine because his money is that important to him. *See Sydnor*, 762 F. App'x at 287 (challenging on direct appeal his ability to pay

---

[8] While Sydnor offers no contemporaneous evidence, he does offer a legal argument. Citing *Pitts v. United States*, 763 F.2d 197 (6th Cir. 1985), he contends that a hearing must be held on counsel's alleged failure to advise him of his fine because it is the type of misstep that renders a plea involuntary. (R. 470, Page ID 2529-30; R. 497, Page ID 2698). Not so. While a district court did improperly advise the defendant in *Pitts* that he could be fined $25,000 when the maximum was $20,000, the Sixth Circuit rested its decision to remand on "affirmative misstatements of the maximum possible sentence," the trial court telling him that he could receive twenty-five years in prison and counsel allegedly telling him he could receive forty years, when the actual exposure was fifteen years. *Pitts*, 763 F.2d at 199-201. Importantly, the Court "stress[ed] that this case does not involve a mere failure to give a defendant some information which he later claims would have affected his pleading decision," which is the case with Sydnor.

the fine).  But this is not sound reasoning because USSG § 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, *except* where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." (emphasis added).  Here, the presiding District Judge did not impose the minimum of the fine range under the Sentencing Guidelines but ordered a $15,000 fine, concluding that Sydnor could pay this amount, which determination was upheld on appeal.  *See Sydnor*, 762 F. App'x at 287.  Thus, to believe Sydnor, the Court must conclude that Sydnor would risk life in prison (possibly a mandatory term of life in prison) to avoid a fine that can only be one that he could afford to pay.  This is not rational; it is foolish.  And while Sydnor would be free to make a foolish choice, he has not offered contemporaneous evidence showing as much.  Accordingly, this claim fails.

### E.    Counsel was Ineffective for Failing to Suppress Inadmissible Evidence at Sentencing (Ground Five)

Sydnor filed a motion to suppress in his underlying criminal case and successfully suppressed some statements that he made to law enforcement under *Miranda v. Arizona*, 384 U.S. 436 (1966).  (R. 172).  Now he argues that his counsel failed to prevent the suppressed statements from being used in his presentence investigation report and at sentencing.  (R. 470, Page ID 2531). This argument is easily disposed of because a court is permitted to consider evidence at sentencing that was suppressed for trial.  *See United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996) ("[U]nder Sixth Circuit precedent suppressed evidence may be considered relevant conduct.") (citing *United States v. Jenkins*, 4 F.3d 1338, 1344-45 (6th Cir. 1993)); *see United States v. Carmack*, 426 F. App'x 378, 383 (6th Cir. 2011) ("[A] district court may consider improperly seized evidence, though inadmissible at trial, to enhance a defendant's sentence, so long as the

evidence was not seized for the purpose of enhancing the defendant's sentence.") (citing *Jenkins*, 4 F.3d at 1344-45).[9]

## III.    EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

Sydnor requests an evidentiary hearing on his § 2255 Motion.  (R. 470, Page ID 2507).
However, an evidentiary hearing is not necessary in this case because Sydnor's allegations in support of his grounds, as discussed above, are refuted by the record or his claims otherwise fail. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("[T]he court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."); *Marshall v. United States*, No. 3:16-CR-0004-JHM, 2018 WL 9439771, at *19 (W.D. Ky. July 9, 2018), *report and recommendation adopted*, No. 3:16CR-00004-JHM, 2018 WL 9439768 (W.D. Ky. Aug. 15, 2018) ("[B]ecause the face of the record entirely refutes his

---

[9] Sydnor cites *Spearman v. United States*, 860 F. Supp. 1234 (E.D. Mich. 1994) in support of this ground.  While the *Spearman* court opined in *dicta* about counsel's failure to object to the use of certain writings in a presentence investigation report and at sentencing, the Court did not cite any legal authority as the basis to do so and thus the case is ultimately silent on this particular issue.  Additionally, Sydnor cites out-of-circuit cases, which he asserts support his position, and argues that *Hill* and *Jenkins* (cited above) are inapposite because they did not deal with evidence used at sentencing that was obtained in violation of *Miranda*.  (R. 497, Page ID 4700).  A point-by-point refutation of Sydnor's arguments would be an exercise in futility for two reasons:  (1) "[T]he Court must decline to follow the out-of-circuit cases in light of binding, contrary Sixth Circuit precedent."  *Holloway v. Scottsdale Ins. Co.*, No. 13-12907, 2014 WL 2764859, at *3 (E.D. Mich. June 18, 2014); (2) Sydnor draws no compelling (or sufficiently developed) distinction between *Hill* and *Jenkins* and his case.  As cited above, *Carmack* permitted evidence seized in violation of the Fourth Amendment to be used at sentencing.  426 F. App'x at 383.  Sydnor offers no reason why *Miranda*'s "prophylactic" protection of the Fifth Amendment right would get different treatment.  *New York v. Quarles*, 467 U.S. 649, 654 (1984).  Moreover, at least one district court has applied *Carmack* and *Jenkins* in the *Miranda* context.  *See Davis v. United States*, No. 3:18-CV-01232, 2020 WL 1955737, at *10 (M.D. Tenn. Apr. 23, 2020).

claims of ineffective assistance of trial counsel, no evidentiary hearing is required to fairly resolve the current § 2255 motion.").

Sydnor also asks for the appointment of counsel.[10]  (R. 470, Page ID 2509).  The Criminal Justice Act governs appointment of counsel in the context of § 2255 motions.  Section 3006A(a)(2)(B) provides: "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."  *See* 18 U.S.C. § 3006A(a)(2)(B).  As indicated by the permissive language of the statute, no constitutional right to counsel exists in a habeas proceeding.  *See Post v. Bradshaw*, 422 F.3d 419, 423 n.1 (6th Cir. 2005) (recognizing that a petitioner has no right to counsel in a habeas proceeding).  Accordingly, the decision to appoint counsel in a habeas proceeding is solely within the discretion of the court, and counsel should be appointed only if justice so requires.  *See United States v. Thornton*, No. 06-cv-459-DCR, 2007 WL 1741780, at *1, n.1 (E.D. Ky. May 25, 2007).

Here, Sydnor's case presents no unusual complexities, problems, or conflicts requiring appointment of counsel, and he has not pointed to any particular circumstances that compel appointment of counsel.  Accordingly, the interests of justice do not require appointment of counsel here.  Further, to the extent Sydnor is seeking the appointment of counsel to assist him in an evidentiary hearing, an evidentiary hearing is not warranted as was explained above.

## IV.    CERTIFICATE OF APPEALABILITY

---

[10] Alternatively, Sydnor asks that, if this Court declines to appoint him counsel, his *pro se* § 2255 motion be held to a less stringent standard than if an attorney had prepared the motion.  (R. 470, Page ID 2509).  "Federal courts have long recognized that the pleadings of a *pro se* litigant must be construed liberally"; this instruction has been heeded in reviewing Sydnor's § 2255 motion.  *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

For the reasons given above, reasonable jurists here would not debate the denial of Sydnor's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the District Judge's entry of a final order in this matter.

## V.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

1)      Sydnor's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 470), including his requests therein for an evidentiary hearing and for appointment of counsel, **be denied;**

2)      A Certificate of Appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

3)      Judgment in favor of the United States **be entered** contemporaneously with the Court's entry of its final order; and,

4)      This action **be stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 24th day of July, 2020.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 IAC\16-21-DCR Sydnor R&R final.docx